UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERYL TOLSTON-ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-cv-6981 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sheryl Tolston-Allen brings this suit against the City of Chicago alleging race discrimination, retaliation for engaging in protected activities, and a hostile work environment. Currently before the Court is the City's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons explained below, the City's motion is granted in part and denied in part.

**Background**

The following facts are undisputed unless otherwise noted. Sheryl Tolston-Allen, an African American woman, began working in the City's Department of Finance in 1996. On September 24, 2012, Tolston-Allen filed a complaint against the City for Family Medical Leave Act ("FMLA") discrimination. This case was settled on August 12, 2014. Tolston-Allen alleges that after her case settled, her supervisor engaged in retaliatory conduct. Specifically, Tolston-Allen asserts that Eugenia Iskos, a white woman, began harassing her at work.

1

*Disciplinary Write-ups*

Iskos prepared a pre-disciplinary notice form, dated November 18, 2014, that identified several City employee policy violations by Tolston-Allen including insubordination, loafing, sleeping on duty, and other inappropriate conduct. Specifically, on September 10, 2014, Tolston-Allen refused to meet with Iskos regarding incorrectly filled time sheets, spoke loudly and unprofessionally in an attempt to "make a scene," and made several personal phone calls. Iskos also noted that on September 30, 2014, Tolston-Allen arrived late without explanation, left customers on hold while she engaged in excessive socializing, and made several personal phone calls. Finally, Iskos wrote that on the morning of November 18, 2014, Tolston-Allen was socializing for a long period although not on break. After a supervisor asked that the socializing end, Tolston-Allen attempted to start an argument. Tolston-Allen then made personal phone calls, where she spoke loudly, used foul language, and disturbed the work environment.

The November 18, 2014 pre-disciplinary notice stated that Tolston-Allen violated Rule 18 subsection 2, 23, 25, 29, 36, 38, 48, and 50 of the City's personnel rules. Tolston-Allen denies that she violated any employment policies. Iskos conducted a pre-disciplinary meeting with Tolston-Allen on December 15, 2014. During the meeting, Iskos discussed Tolston-Allen's employee violations and recommended a one-day suspension. This recommendation was supported by three other members of management. After completing the union required process, Tolston-Allen was suspended for one day on February 23, 2015.

On January 15, 2015, Iskos issued a pre-disciplinary notice to Tolston-Allen for submitting an edit sheet to a manager whom she did not report to on January 9, 2015 and not complying with the City's call-in policy on January 15, 2015. The pre-disciplinary notice did not result in a suspension or recommendation for a suspension. On April 27, 2015, Tolston-Allen received a pre-

disciplinary notice for practicing law without a license. This notice did not result in disciplinary action.

On June 15, 2015, Wanda Mohead, a supervisor in the Revenue Collections department sent an assignment to Tolston-Allen. As Mohead was not her direct supervisor, Tolston-Allen sent an e-mail to her supervisor, Dana Bussie, stating that she would not take an assignment from someone she had a "case" against. After this was reported to Anthony Smith, Manager of the Revenue Collections department, he reminded Tolston-Allen that she was already warned that complaining about work sent from an indirect supervisor was inappropriate. Based on this incident, Smith submitted a pre-disciplinary notice to Tolston-Allen on July 21, 2015 for insubordination. After the union process, Tolston-Allen was suspended for three days on August 31, 2015.

*Tolston-Allen Allegations*

Tolston-Allen states that shortly following the settlement of her first case, Iskos began following her around the office and staring at her through the office windows. Although the timing is unclear, sometime in 2013, Tolston-Allen alleges that when she warned a supervisor that she would file an employment grievance, Iskos responded stating "nobody is going to help your black ass." The City denies this occurrence. On June 27 and June 28, 2013, Iskos sent an e-mail to Tolston-Allen's direct supervisor, Dana Bussie, asking her to monitor Toston-Allen's actions to ensure compliance with workplace policies.

Tolston-Allen submitted a request for FMLA leave on January 9, 2015. On January 14, 2015, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination. On April 8, 2015, the City's Equal Employment Opportunity ("EEO") division received another complaint from Tolston-Allen. On August 24, 2015, Tolston-Allen took an unpaid leave of absence until December 16, 2015. When she returned, Tolston-Allen was transferred to the Department of Transportation, where she currently works.

3

Tolston-Allen filed this claim alleging that the City committed retaliation against her for engaging in protected activities, race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et. seq., and subjected her to a hostile work environment.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact, and if done, judgment as a matter of law should be granted in its favor. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**Discussion**

The City argues that summary judgment should be granted because Tolston-Allen: (1) fails to establish a *prima facie* case of retaliation; (2) fails to demonstrate a *prima facie* case for race discrimination; (3) and fails to show that the workplace was a hostile environment.

*Count I. Retaliation Claim*

To establish a *prima facie* case for FMLA, ADA, or Title VII retaliation, Tolston-Allen must demonstrate that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; (3) and a causal connection exists between the two. *See King v. Ford Motor Company*, 872 F.3d 833, 842 (7th Cir. 2017); *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). To survive summary judgment on a retaliation claim, a plaintiff needs to provide evidence, either direct or circumstantial, that would permit a reasonable fact finder to infer retaliation by the employer. *See*

4

*Castro v. DeVry University, Inc.*, 786 F.3d 559, 564-65 (7th Cir. 2015) (internal citation omitted). Circumstantial evidence can include suspicious timing, evidence that similarly situated employees received different treatment, and evidence that the employer's proffered reason for the adverse employment action was pretextual. *Id.* at 565. (internal citations omitted).

In this case, the parties do not dispute that Tolston-Allen engaged in protected activities when she: (1) filed the original complaint for FMLA discrimination on September 24, 2012, (2) requested FMLA leave on January 9, 2015, (3) filed the EEOC claim for race discrimination on January 14, 2015, and (4) filed the complaint with the City's EEO division on April 8, 2015. There is also no dispute that the one-day and three-day suspensions were adverse employment actions.

*1. One-day Suspension*

Tolston-Allen argues that Iskos began to retaliate against her shortly after Tolston-Allen settled her original lawsuit. Specifically, Tolston-Allen asserts that Iskos began to follow her around the office and look for ways to discipline her, which all culminated in the one-day suspension recommended by Iskos in the December 14, 2014 pre-disciplinary meeting and the suspension which occurred on February 23, 2015.

As a preliminary matter, Tolston-Allen does not provide any case law in support of the argument that settling her original lawsuit on September 12, 2014 was protected activity. Though it does not appear that the Seventh Circuit has directly ruled on this issue, at least one court in this district held that resolving a lawsuit does not constitute protected activity. *See Foreman v. Soo Line Railroad Company*, No. 16 C 3948, 2018 WL 5024912 *3 n.2 (N.D. Ill. Oct. 17, 2018) ("It is the dates of filing that are relevant for the purposes of measuring the temporal proximity between the protected activity and the adverse action, not the date of the signing of the settlement agreement."). (Tharp, J.). While not binding, the Court finds the reasoning in *Foreman* to be persuasive on this point.

Further, Tolston-Allen has not explained how Iskos paying extra attention to her constitutes an adverse employment action. Title VII does not protect employees from petty slights or annoyances that most employees experience at work. *Lewis v. Wilkie*, 909 F.3d 858, 867-68 (7th Cir. 2016) (internal citation omitted). An adverse employment action in this context must be a significant change in employment status, such as firing, failure to promote or disciplinary write-ups that lead to a suspension. *See Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007).

Tolston-Allen must, therefore, demonstrate that the one-day suspension was retaliatory for filing the original claim for FMLA discrimination in September 2012. Causal connection can be established by showing that the adverse employment action would not have occurred but for the protected activity. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

In support of her argument, Tolston-Allen points to e-mails sent by Iskos to Tolston-Allen's direct supervisor, Dana Bussie. On September 28, 2012, Iskos asked Bussie to monitor Tolston-Allen for "missed swipes, tardi[ness], patterns of sick usage," and to make sure she was turning in her work on time. Iskos also asked "[d]idn't she issue a clearance in error last month?" Dkt. 79-5. On June 27, 2013, Iskos wrote to Wanda Mohead, "I need you to monitor Sheryl's interactions today and to advise." Dkt. 79-6 at 2. On June 28, 2013, Iskos wrote to Bussie, "I would like for you to monitor Sheryl, if she comes in that is, for the day regarding her phone usage. I would like a report by the end of the day with specifics." *Id*. at 1.

Tolston-Allen also argues that these e-mails show that Iskos was "out to get her." Tolston-Allen further states that this should be considered in context of Iskos stating the pejorative term sometime in 2013. As mentioned previously, the City disputes that Iskos said this. As the Court must view the evidence in a light most favorable to Tolston-Allen however, the Court will accept that Iskos made this statement, sometime in 2013.

6

The City's proffered reason for the one-day suspension was based on employee violations. Iskos noted specific City violations on September 14, September 30, and November 18, 2014. In response, Tolston-Allen points to her deposition, where she testified that all of Iskos' pre-disciplinary notices were based on lies. Dkt. 79-2 at 15. As such, because there is a dispute about the truth of the November 18, 2014 pre-disciplinary report, there exists an issue of material fact regarding whether Tolston-Allen was suspended for one-day because of the employee personnel violations, or in retaliation for her case filed in 2012. A reasonable jury could find that the e-mails sent by Iskos speak to some retaliatory animus Iskos may have had towards Tolston-Allen. Accordingly, Summary judgment is not appropriate.

Iskos' recommendation for the one-day suspension could not have been in retaliation for the other protected activities because those activities occurred *after* the alleged conduct culminating in the one-day suspension. There can be no retaliation if the employer has no knowledge of the protected activity. *Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009) (internal citation omitted). Regarding the original complaint filed September 2012, there exists a genuine issue for trial. The City's motion for summary judgment against Count I is denied.

*Three-Day Suspension*

As mentioned previously, the City asserts that the three-day suspension resulted from Tolston-Allen's insubordination that occurred on June 14, 2015. It appears that Tolston-Allen contends that the City's proffered reason for the three-day suspension was pretextual. In her response to the City's motion, Tolston-Allen asserts that Smith's e-mail specifically allowed for an employee to reach out to his or her direct supervisor if they have an issue with what they were instructed to do by an indirect supervisor. Tolston-Allen also points out that Iskos was present during this meeting.

7

Tolston-Allen's argument fails for two reasons. First, Tolston-Allen presents no evidence of any causal connection between the three-day suspension and any protected activity. The City argues, and Tolston-Allen does not contest, that Smith's employment began March 3, 2015. Tolston-Allen does not provide evidence that Smith knew of Tolston-Allen's FMLA request on January 9, 2015 or the complaint filed with the EEOC on January 15, 2015. Tolston-Allen does not argue, moreover, that Iskos or Smith were aware of her EEO complaint filed on April 8, 2015 and has not articulated a causal connection between EEO complaint and the July 21, 2015 disciplinary notice that led to the three-day suspension. As the Seventh Circuit has established, temporal proximity alone is "'rarely sufficient' to establish causation." *Castro*, 786 F.3d at 565 (citing *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011)).

Second, Tolston-Allen has not demonstrated that the City's reason was actually pretextual. Courts are not concerned with the employer's fairness or accuracy of the reason for the adverse action; only whether the reason was pretextual, "meaning that it was a lie." *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 601 (7th Cir. 2010) (internal quotation omitted). Here, the City presented a declaration by Anthony Smith as well as the pre-disciplinary notice drafted by Smith. Both forms state that Tolston-Allen refused to accept work from an indirect supervisor despite being warned that this behavior was inappropriate. Thus, Tolston-Allen was disciplined for insubordination. Dkt. 72-3 at 26-31. Iskos' presence at the meeting, furthermore, is not evidence of retaliatory intent when she was not the decisionmaker regarding this write-up. Tolston-Allen, therefore, has failed show that there is a genuine issue of material fact of whether the three-day suspension was retaliation for any protected activity.

Finally, the Court finds that the two disciplinary notices that did not end in suspensions or other changes in Tolston-Allen's terms of employment did not constitute an adverse employment action for the purposes of Title VII. *See Lewis*, 496 F.3d at 653.

8

*Count II. Race Discrimination*

To establish a *prima facie* case for race discrimination under Title VII, a plaintiff must demonstrate that: (1) she is a member of a protected class, (2) her job performance met the employer's legitimate expectations, (3) she experienced an adverse employment action, and (4) a similarly situated person outside her protected class received more favorable treatment. *Coleman*, 667 F.3d at 845. Once a *prima facie case* is demonstrated, the burden shifts to the employer to explain a "legitimate, nondiscriminatory reason" for its adverse employment action. *Id.* (internal citation omitted). If the employer does this, the burden shifts back to the plaintiff to present evidence showing that the employer's proffered reason is pretextual. *Id.* (internal citation omitted).

Here, the City argues that Tolston-Allen has not established *prima facie* case of race discrimination because she was not meeting the City's legitimate expectations and has not shown that a similarly situated person outside of her protected class was treated more favorably.

In support of its argument that she was not meeting the employer's expectations, the City points to Tolston-Allen being suspended on two separate occasions for City Personnel Policy violations, which included excessive socializing, using foul language, being disruptive, and insubordination. The City further argues that the recommendations for suspension were supported by other members of management. In response, Tolston-Allen provided a declaration stating that she consistently received evaluations and positive comments from customers. At the summary judgment stage, however, a declaration is insufficient to demonstrate that a plaintiff's performance was meeting the employer's expectations. Even the opinions of coworkers do not establish a material issue of fact on adequate performance. *See Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 752 (7th Cir. 2006) (internal citation omitted). Nevertheless, because the Court has already found that there is a dispute regarding the one-day suspension, the Court finds that Tolston-Allen met the City's legitimate employment expectations.

Tolston-Allen, however, has not shown that similarly situated employees outside of her protected class were treated more favorably. While the comparators do not need to be identical in "every conceivable way," the plaintiff has the burden to show that the similarly situated individuals are comparable in "all material respects." *See Sweatt v. Union Pacific R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015) (internal citation omitted).

In the context of this case, Tolston-Allen must present admissible evidence of individuals with similar job descriptions, who reported to the same supervisors, and engaged in the same conduct. *See McGowan v. Deere & Co.*, 581 F.3d 575, 579-80 (7th Cir. 2008). Tolston-Allen does not point to any employees who engaged in similar conduct, but merely states, "[n]one of Plaintiff's white co-workers were harassed by [Iskos]." Dkt. 79-2 at 21. Such "conclusory assertions," however, are insufficient to establish that a similarly situated individual was treated more favorably. *See Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) (finding plaintiff's "vague, conclusory assertions" were insufficient to show favorable treatment at the summary judgment stage). Summary judgment is the "put up or shut up moment," and Toslton-Allen must present admissible evidence that would allow a reasonable trier of fact to find that she experienced race discrimination. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Tolston-Allen has not done so.

The City disputes that Iskos stated the derogatory term in 2013. But again, the Court will view the evidence in the light most favorable to Tolston-Allen. Remarks can demonstrate an inference of discrimination when they are made by: (1) a decision-maker, (2) around the time of a decision, and (3) in reference to an adverse employment action. *Egonmwan v. Cook Cty. Sheriff's Dep't*, 602, F.3d 845, 850 (7th Cir. 2010). Still, Iskos' alleged statement occurred sometime in 2013 and was not related to an adverse employment action, let alone the one-day suspension that was recommended by Iskos in December 2014. The Court, therefore, finds that Tolston-Allen has failed

to establish a *prima facie* case for race discrimination. Accordingly, the City's motion for summary judgment against Count II is granted.

*Count III. Hostile Environment Claim*

To survive summary judgment on a hostile work environment claim, Tolston-Allen must show that (1) the work environment was objectively and subjectively offensive; (2) the harassment was based on race; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). The conduct must be severe or pervasive enough to alter the conditions of employment. *Johnson v. Advocate Health and Hospitals Corporation*, 892 F.3d 887, 900 (7th Cir. 2018) (internal citation omitted). This depends on the severity of the alleged conduct, its frequency, and whether it is physically threatening or humiliating. *Id.* (internal citation omitted).

Tolston-Allen asserts that Iskos followed her around and hid behind poles and bannisters when spotted. Tolston-Allen argues, further, that Iskos' intention was to file false allegations in disciplinary reports. Tolston-Allen does not, however, seem to argue that these actions were connected to her race. *See Yanick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011) (finding that to defeat summary judgment, plaintiff alleging hostile environment "must show that the conduct had a racial character or purpose"). Title VII does not require admirable behavior of supervisors or employees; but rather, the conduct must be severe enough to be an environment hostile to a plaintiff's protected class. *Johnson*, 892 F.3d at 900 (citing *Russell v. Bd. or Trs. of Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001)). Even Iskos' alleged profane term in 2013 appears to be an offhand isolated incident that would not "alter[] the terms and conditions of employment." *See Johnson*, 892 F.3d at 900.

It is clear that Iskos and Tolston-Allen were not best friends and this Court would not recommend Iskos for a "supervisor of the year" award. The Court finds, nevertheless, that no reasonable jury could find that Iskos' conduct created a hostile work environment. *See Abrego v.*

*Wilkie*, 907 F.3d 1004, 1005 (7th Cir. 2018) (finding no hostile environment despite claims that supervisors were hostile, disrespectful, and subjected the plaintiff to "excessive monitoring" because of race); *Smith v. Northeastern Illinois University*, 388 F.3d 559, 567 (7th Cir. 2004) (holding that while a supervisor's use of the term "black mother*****s" was deplorable, an isolated use of an epithet is insufficient to establish a hostile work environment). Although Tolston-Allen took a leave of absence in August 2015, she has not provided any admissible evidence that this was connected to any conduct in the workplace. The City asserts, and Tolston-Allen does not dispute, that she was able to complete all work assigned to her. Summary judgment is granted against Tolston-Allen's hostile work environment claim.

**Conclusion**

For the reasons explained above, the City's motion for summary judgment against Count I is denied. The Court grants the City's motion for summary judgment against Counts II and III.

**IT IS SO ORDERED.**

Date: 9/6/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge